[Cite as *State v. Stephenson*, 2014-Ohio-1365.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-P-0044** |
| PATRICIA J. STEPHENSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2012 CR 0752.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Kristina Drnjevich*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Patricia J. Smith*, 9442 State Route 43, Streetsboro, OH 44241 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from the Portage County Court of Common Pleas. Appellant Patricia J. Stephenson was convicted of kidnapping, a first degree felony, in violation of R.C. 2905.01(A)(3) with a firearm specification in violation of R.C. 2929.14 and R.C. 2941.145. At issue is whether appellant's conviction was against the manifest weight of the evidence. For the following reasons, we affirm.

{¶2} On October 27, 2012 Grace Warren held a party at her apartment. A DJ brought speakers to the party; however, after the party ended, one speaker was left at

Warren's apartment. On October 29, 2012, Antonio Stephenson and appellant came to Grace Warren's apartment to retrieve the speaker. After this point, appellant's and the state's version of events diverge.

{¶3} According to the state, once Antonio and appellant were inside the apartment, Antonio asked Warren where her boyfriend Jawn Holmes was located. Warren then called Holmes, who lived on a floor below her apartment, to come up to her apartment. When Holmes arrived, he walked toward Antonio and said, "What's up?" At this point, appellant pulled out a gun, pointed it at Holmes' head and told Holmes, "You're not going to mess with my cousin."[1]

{¶4} In response Holmes indicated that he was going to leave, put his hands above his head and walked to the door; however, appellant blocked his access to the door with her body. Holmes reached for the gun and a fight ensued. At some point during the struggle, appellant fired a shot that went into the ceiling of Warren's apartment. Holmes, however, pretended that he got shot, and appellant and Antonio subsequently fled. When the police arrived at the apartment, they discovered a .22 caliber casing near the door.

{¶5} At trial, appellant presented a different story. On cross-examination of the state's witnesses, appellant attempted to illustrate that Holmes had pressured Warren to help him violently confront Antonio when Antonio came to the apartment. Appellant sought to show that Holmes' motive for staging the attack originated from his discontent that Antonio slept with Warren on the night of the party. Consequently,

---

1. There is some confusion about whether Antonio was appellant's cousin or brother. Aside from this instance, we will refer to Antonio as appellant's brother as that is how he was portrayed the majority of the time.

appellant maintained that she was an innocent bystander that, through bad luck, became a victim in Holmes' and Warren's setup.

{¶6} Appellant also attacked the credibility of the prosecution's witnesses. Specifically, appellant attacked Warren's credibility because she lied to the police during the investigation. When the police requested Warren's cell phone as evidence, Warren told the police that she had not deleted any text messages from her phone. However, later it was discovered that she had sent some text messages to a friend shortly after the incident that were not in the police's log of her text messages. According to Warren, she had forgotten about deleting the text messages.

{¶7} Appellant challenged Holmes' credibility because he lied about possessing a gun. Specifically, after appellant and Antonio fled the apartment, Holmes went back to his apartment and grabbed a firearm to go after the Stephensons. However, when he was questioned by the police, Holmes initially lied about possessing a gun. Holmes stated that he lied because gun possession would be grounds to be fired from his job.

{¶8} Finally, appellant also questioned why the police officers did not perform a gunpowder residue test to determine who fired the gun.

{¶9} As her sole assignment of error, appellant alleges that:

{¶10} "The verdict was against the manifest weight of the evidence where the victim and witness were dishonest throughout the testimony and no other evidence could support their inconsistent and unbelievable version of events."

{¶11} Within this assignment of error, appellant claims that Warren's and Holmes' entire testimony was incredible because each had lied to the police. Specifically, appellant claims that Warren lied about deleting text messages from her phone near the time of the incident and that Holmes lied about possessing a gun on

3

the night in question.  Appellant also claims that because the gun she allegedly used was never found, reasonable doubt exists as to whether she was responsible for the bullet hole in Warren's ceiling.  Instead, appellant claims that the jury should have believed that (1) Warren and Holmes were planning on seeking revenge on appellant's brother because Holmes was upset that Antonio allegedly slept with Warren and (2) appellant happened to be an innocent bystander in the set up.

{¶12}  As this court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13-15 (Dec. 23, 1994):

{¶13}  "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.

{¶14}  "'[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶15}  "In determining whether the verdict was against the manifest weight of the evidence, '***the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  (Citations omitted.)  (Emphasis added.)'" *Davis*, 49 Ohio App.3d at 113.

{¶16}  Under R.C. 2905.01, kidnapping is defined as follows:

{¶17}  "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other

4

person, for any of the following purposes: * * * (3) To terrorize, or to inflict serious physical harm on the victim or another."

{¶18} Under R.C. 2929.14(B)(1)(a)(ii), to prove the firearm specification, the prosecution needs to show that "the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense and displaying the firearm, brandishing the firearm, indicating that the offender possessed the firearm, or using it to facilitate the offense."

{¶19} Upon reviewing the evidence, the verdict is not against the manifest weight. None of the inconsistencies in the prosecution's key witnesses went to elements of the crime, nor do these inconsistencies demonstrate the witnesses are too incredible to be believed on any matter. Furthermore, there is evidence from a jailhouse informant, Warren, and Holmes, as well as a .22 caliber casing found near the doorway in Warren's apartment indicating that Stephenson fired a shot from a .22 caliber gun into the ceiling of Warren's apartment. The jury did not lose its way resolving the witnesses' credibility the way it did.

{¶20} The sole assignment of error is without merit. The judgment of the Portage County Court of Common Pleas is therefore affirmed.


TIMOTHY P. CANNON, P.J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.